1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARCO ALEXANDER GOMEZ,

11               Petitioner,              No. CIV S-03-2558 RRB GGH P

12        vs.

13   D.L. RUNNELS, et al.,

14               Respondents.             FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17            Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2000 conviction for two counts of

19   assault with a deadly weapon (Cal. Penal Code § 245(a)(1)), the finding that these felonies were

20   committed for the benefit of, at the direction of, or in association with a criminal street gang (Cal.

21   Penal Code § 186.22(b)(1)), and that petitioner personally inflicted great bodily injury on the

22   victims (Cal. Penal Code § 12022.7(a)).

23            The petition raises the following claims: 1) insufficient evidence to support the

24   street gang enhancement; 2) ineffective assistance of trial and appellate counsel; 3) jury

25   instruction error; 4) trial court erred in allowing gang expert to offer personal opinion.

26   /////

1

1    After carefully reviewing the record, the court recommends that the petition be

2  denied.

3  II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

4    The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

5  petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

6  138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

7  AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

8  standards of review to be used by a federal habeas court in assessing a state court's adjudication

9  of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263

10 (9th Cir. 1997).

11    In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

12 Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

13 for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

14 between "contrary to" clearly established law as enunciated by the Supreme Court, and an

15 "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

16 to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

17 Court on a point of law, or (2) if the state court case is materially indistinguishable from a

18 Supreme Court case, i.e., on point factually, yet the legal result is opposite.

19    "Unreasonable application" of established law, on the other hand, applies to

20 mixed questions of law and fact, that is, the application of law to fact where there are no factually

21 on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

22 Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

23 AEDPA standard of review which directs deference to be paid to state court decisions.  While the

24 deference is not blindly automatic, "the most important point is that an *unreasonable* application

25 of federal law is different from an incorrect application of law....[A] federal habeas court may not

26 issue the writ simply because that court concludes in its independent judgment that the relevant

2

1   state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

2   that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

3   1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

4   objectively unreasonable nature of the state court decision in light of controlling Supreme Court

5   authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

6            The state courts need not have cited to federal authority, or even have indicated

7   awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.

8   Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

9   contrary to, or an unreasonable application of, established Supreme Court authority. Id.  An

10   unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

11   occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

12   established Supreme Court authority reviewed must be a pronouncement on constitutional

13   principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

14   binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

15            However, where the state courts have not addressed the constitutional issue in

16   dispute in any reasoned opinion, the federal court will independently review the record in

17   adjudication of that issue.  "Independent review of the record is not de novo review of the

18   constitutional issue, but rather, the only method by which we can determine whether a silent state

19   court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

20   2003).

21            When reviewing a state court's summary denial of a claim, the court "looks

22   through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234

23   F.3d 1072, 1079 n. 2 (9th Cir. 2000).

24   /////

25   /////

26   /////

1    III.  Discussion

2              A.  Insufficient Evidence

3              *Legal Standard*

4              When a challenge is brought alleging insufficient evidence, federal habeas corpus

5    relief is available if it is found that upon the record evidence adduced at trial, viewed in the light

6    most favorable to the prosecution, no rational trier of fact could have found "the essential

7    elements of the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,

8    319, 99 S. Ct. 2781, 2789 (1979).  Under Jackson, the court reviews the entire record when the

9    sufficiency of the evidence is challenged on habeas.  Adamson v. Ricketts, 758 F.2d 441, 448 n.

10   11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483

11   U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the

12   evidence, and to draw reasonable inferences from basic facts."  Jackson, 443 U.S. at 319, 99 S.

13   Ct. at 2789.  "The question is not whether we are personally convinced beyond a reasonable

14   doubt.  It is whether rational jurors could have reached the same conclusion that these jurors

15   reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

16              If the trier of fact could draw conflicting inferences from the evidence, the court in

17   its review will assign the inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465,

18   469 (9th Cir. 1994).  The fact that petitioner can construct from the evidence alternative scenarios

19   at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable

20   trier of fact could have found the conviction scenario beyond a reasonable doubt.

21              In reviewing the sufficiency of the evidence supporting a
             conviction, we search the record to determine "whether a
22           reasonable jury, after viewing the evidence in the light most
             favorable to the government, could have found the defendants
23           guilty beyond a reasonable doubt of each essential element of the
             crime charged."  United States v. Douglass, 780 F.2d 1472, 1476
24           (9th Cir.1986).  *The relevant inquiry is not whether the evidence
             excludes every hypothesis except guilt, but whether the jury could
25           reasonably arrive at its verdict.*  United States v. Fleishman, 684
             F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct.
26           464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d

1337, 1343 (9th Cir.1981), overruled on other grounds, United
States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).

United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)(emphasis added).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable determination.  Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

*Insufficient Evidence of Primary Activity*

Petitioner alleges that there was insufficient evidence to support the jury's finding that he committed the assaults for the benefit of a street gang in violation of Cal. Penal Code § 186.22, which is part of the Street Terrorism and Prevention Act (STEP Act) (Cal. Penal Code § 186.20 et seq.).

Anyone who commits a violent felony to benefit a criminal street gang is subject to a 10 year sentence enhancement.  Cal. Penal Code § 186.22(b)(1)(C).  "Criminal street gang" is defined as any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its *primary activities* the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25) inclusive, or (31) to (33), inclusive of subdivision (3), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.  Cal. Penal Code § 186.22(f).

Petitioner argues that there was insufficient evidence that the gang he was associated with, the West Side Locos (WSL), had as one of its primary activities the commission of one or more of the criminal acts listed in § 186.22(e).

The California Court of Appeal denied petitioner's claim for the following reasons.  The discussion of this claim by the California Court of Appeal also contains a factual

summary.  After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

The evidence shows that the victims, Coffman and Mata, were members of the "South Side Locos," a gang under the "Sureno" gang umbrella.  Defendants Gomez and Nunez were members of the enemy "West Side Locos" (WSL), one of the "Norteno" gangs.

On May 13, 2000, Coffman was driving around when he saw Nunez traveling in the opposite direction with Gomez as a passenger.  The rivals exchanged angry shouts.  Nunez made a U-turn and followed Coffman.  After Coffman and Gomez flashed knives at each other, Nunez and Gomez appeared to break off the chase.

Shortly thereafter, Coffman picked up Mata and they drove to a gas station. Gomez and Nunez arrived at the station while Coffman was pumping gas.  Gomez got out of the car, quickly walked toward Mata, and stabbed him in the stomach and arm with a large knife.  Meanwhile, Nunez got out of the car and began fighting with Coffman.  When Coffman fell to the ground, Nunez continued to pummel him while Gomez came over and stabbed Coffman in the chest and abdomen.

Sergeant Michael Cook testified as a gang expert based upon his six years of experience investigating gang-related crimes in Manteca; his special gang training; and his conversations with other peace officers, gang members and their victims, and witnesses to crimes committed by criminal street gangs.  Cook was familiar with the WSL gang.  The prosecutor asked Cook, "in your opinion[,] does the WSL gang have as one of its primary activities the commission of certain crimes?"  Cook answered, "Yes, they do."  The prosecutor next asked Cook, "What crime or crimes is it they primarily commit?"  Cook replied, "I have seen them engage in a pattern of sales of drugs, assault with deadly weapons, attempted murders, auto theft."  Cook testified that he knew of specific WSL members who had been convicted of such crimes.  He named one WSL member who was convicted of vehicle theft (Veh. Code, § 10851) and a second WSL member who was convicted of attempted murder (§ 664, subd. (a)) and possession of methamphetemine for sale (Health & Saf. Code, § 11378).  In addition, Cook stated that WSL "does have a history of drug sales." (See People v. Gardeley (1996) 14 Cal.4th 605, 620 [expert testimony sufficient to establish primary activity element of the criminal street gang enhancement].)

The attempted or completed crimes of WSL members, including the two felonies for which Gomez was convicted in this case (People v. Sengpadychith (2001) 26 Cal.4th 316, 320, 323), are predicate crimes listed in the gang enhancement statute.  (§ 186.22, subd. (E)(1) [assault with a deadly weapon]; (e)(3) [unlawful homicide or attempted murder]; (3)(4) [possessing a controlled substance for sale]; (3)(25) [vehicle theft].)

Nevertheless, Gomez argues (1) the evidence "showed precisely one occurrence each of four difference offenses" (2) thus compelling the conclusion that the prosecution "failed to meet its burden of proving that any of these offenses constituted a 'primary activity' of [WSL]," as required by the statute.  (§ 186.22,

1    subd. (f).)  We disagree.

2    The evidence establishes Gomez himself committed two assaults with a deadly
     weapon.  Moreover, gang expert Cook testified that members of WSL had
3    engaged in "drug sales" (plural), "attempted murders" (plural), and "assault with
     deadly weapons" (plural in a grammatically incorrect form).  The fact Cook
4    identified by name only two WSL perpetrators of specific instances of such crimes
     does not establish that those particular crimes were committed only once each by
5    WSL.

6    In any event, there is no merit in Gomez's argument that a criminal street gang
     enhancement cannot be predicated on the "one-time-only" commission of
7    specified felonies because those crimes "having been shown to occur but once
     each, cannot, by virtue of their singular, one-time-only appearances, constitute
8    'primary' activities [of the gang] within the meaning of [People v. Sengpadychith,
     supra, 26 Cal.4th 316]."

9

10   "Criminal street gang" means an ongoing group of three or more persons, whether
     formal or informal, having as one of its primary activities the commission of *one
     or more* of the felonies specified in the statute.  (§ 186.22, subds. (e) and (f).)
11   This does not mean the gang must specialize in, or concentrate on, a particular
     crime, i.e., commit a specified felony more than once for its criminal conduct to
12   be a "primary activity" of the criminal street gang.  Rather, "[s]ufficient proof of
     the gang's primary activities might consist of evidence that the group's members
13   *consistently and repeatedly* have committed criminal activity listed in the gang
     statute" (People v. Sengpadychith, supra, 26 Cal.4th at p. 324, orig. italics), i.e.
14   gang members have consistently and repeatedly committed either one specified
     felony or have consistently and repeatedly committed a combination of felonies
15   specified by the statute.  (See id. at p. 323.)  Indeed, it would be absurd to
     construe the statute not to apply to a gang that diversifies its criminal conduct.
16
     Here, the evidence that Gomez stabbed two rival gang members with a deadly
17   weapon and that other members of Gomez's street gang engaged in automobile
     theft, possessed controlled substances for sale, and attempted to commit murder
18   was sufficient to support the finding that the gang had as one or more of its
     "primary activities" the commission of one or more of the felonies specified in
19   section 186.22, subdivision (e).

20   Opinion of California Court of Appeal lodged September 8, 2006, pp. 3-7.

21        In Sengpadychith, supra, the California Supreme Court made additional comments

22   regarding how to establish the "primary activities" of a criminal street gang:

23   Nothing in this statutory language prohibits the trier of fact from considering the
     circumstances of the *present* or charged offense in deciding whether the group has
24   as one of its primary activities the commission of one or more of the statutorily
     listed crimes.
25
     Evidence of past or present conduct by gang members involving the commission
26   of one or more of the statutorily enumerated crimes is relevant in determining the

                                              7

group's primary activities.  Both past and present offenses have some tendency in reason to show the group's primary activity (see Evid. Code § 210) and therefore fall within the general rule of admissibility (id., § 351).  Insofar as the Court of Appeal's decision in In re Elodio O., supra, 56 Cal.App.4th 1175, allowed evidence only of past offenses, we disapprove it.

As we just discussed, evidence of either past or present criminal acts listed in subdivision (e) of section 186.22 is admissible to establish the statutorily required primary activities of the alleged criminal street gang.  Would such evidence alone be sufficient to prove the group's primary activities?  Not necessarily.  The phrase "primary activities," as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's "chief" or "principal" occupations.  (See Webster's Internat. Dict. (2d ed. 1942) p. 1963 [defining "primary"].)  That definition would necessarily exclude the occasional commission of those crimes by the group's members.  As the Court of Appeal cautioned in People v. Gamez (1991) 235 Cal.App.3d 957, 970-971 [286 Cal.Rptr. 894], disapproved on another point in Gardeley, supra, 14 Cal.4th 605, 624, footnote 10: "Though members of the Los Angeles Police Department may commit an enumerated offense while on duty, the commission of crime is not a primary activity of the department.  Section 186.22...requires that one of the primary activities of the group or association itself be the commission of [specified] crime[s] ...Similarly, environmental activists or any other group engaged in civil disobedience could not be considered a criminal street gang under the statutory definition unless one of the primary activities of the group was the commission of one of the [25] enumerated crimes found within the statute."

Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity, listed in the gang statute.  Also sufficient might be expert testimony, as occurred in Gardeley, supra, 14 Cal.4th 605.  There, a police gang expert testified that the gang of which defendant Gardeley had for nine years been a member was primarily engaged in the sale of narcotics and witness intimidation, both statutorily enumerated felonies.  (See § 186.22, subd. (e)(4) & (8).)  The gang expert based his opinion on conversations he had with Gardeley and fellow gang members, and on "his personal investigations of hundreds of crimes committed by gang members," together with information from colleagues in his own police department and other law enforcement agencies.  (Gardeley, supra, at p. 620.)

26 Cal.4th at 323-324.

As discussed by the California Supreme Court in Sengpadychith, in People v. Gardeley, 14 Cal.4th 605, 59 Cal.Rptr.2d 356 (1997), the California Supreme Court found that testimony of a police gang expert could be sufficient evidence of "primary activity":

Detective Boyd's testimony also provided much of the evidence necessary to establish that the Family Crip gang met the STEP Act's definition of a "criminal street gang." (§186.22, subd. (f) [defining a criminal street gang as an "ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more"

8

criminal acts enumerated in subdivision (e) of the statute, and which has a "common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."].)

Boyd testified that defendants Gardeley and Thompson admitted to membership in the Family Crips, and that Gardeley had been a member of the gang since 1983. Boyd also expressed his expert opinion that the primary activity of the Family Crip gang was the sale of narcotics, but that the gang also engaged in witness intimidation. (These are two of the offenses enumerated in subdivision (e) of section 186.22.) Boyd based this opinion of conversations with the defendants and with other Family Crip members, his personal investigations of hundreds of crimes committed by gang members, as well as information from his colleagues and various law enforcement agencies.

14 Cal.4th at p. 619-620, 59 Cal.Rptr. at 365.

At petitioner's trial, Manteca Police Sergeant Cook testified that he spent six years investigating gang related crimes. RT at 728. In petitioner's case, he testified as gang expert. RT at 729-731 (describing Sergeant Cook's gang related training and experience). Sergeant Cook testified that members of the WSL gang "engage in a pattern of sale of drugs, assault with deadly weapons, attempted murders, auto theft." RT at 743. The basis of this opinion was his "experience, investigation, contact with West Side Loco members, testifying in court on them. Reading police reports." RT at 743. He was aware of WSL members convicted of these crimes. RT at 743. Assault with a deadly weapon, attempted murder, drug sales and auto theft are "primary activity" crimes. See Cal. Penal Code § 186.22(e)(1), (3)(4) and (25).

Based on the reasoning of the California Court of Appeal, the court finds that Sergeant Cook's testimony set forth above was sufficient to demonstrate that the primary activities of the WSL gang were to commit assault with a deadly weapon, attempted murder, auto theft and drug sales.

In the petition and traverse, petitioner makes several arguments attacking the credibility of Sergeant Cook. In reviewing the record, this court must defer to the factfinders reasonable credibility determinations. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). This court has reviewed Sergeant Cook's testimony and finds that the jury did not

9

1   unreasonably find, based on his opinion, that the WSL gang had one or more of the crimes listed

2   above as its primary activity.  The court will address some of petitioner's arguments below.

3          Petitioner cites Sergeant Cook's testimony that during his six years investigating

4   gangs he investigated 25 to 30 cases and that there are 8 Hispanic gangs in Manteca.  RT at 729-

5   730, 737.  Petitioner argues that Sergeant Cook did not testify how many of his cases involved

6   the WSL gang.  Based on this testimony, petitioner argues that Sergeant Cook was not qualified

7   to testify regarding the primary activities of the WSL gang.

8          Sergeant Cook's testimony demonstrates that he was very knowledgeable

9   regarding the WSL gang.  His testimony regarding the number of gang cases he investigated,

10  without identifying how many involved WSL members, and the number of Hispanic gang

11  members in Manteca, did not make his testimony so unreliable that the jury should have rejected

12  it.  Sergeant Cook's knowledge of the WSL gang was not based only on the cases he

13  investigated.

14         Petitioner goes on to argue that Sergeant Cook testified that he investigated 4 to 5

15  individual cases per year involving gangs.  RT at 819.  Considering that there are 8 Hispanic

16  gangs in Manteca, petitioner argues that this means each gang commits 1-2 crimes per year.

17  Petitioner argues that this demonstrates that the WSL gang must have only been involved in the

18  "occasional commission of crimes," rather than having criminal activity as one of its primary

19  activities.

20         Sergeant Cook's opinion that the WSL had criminal activities as a primary activity

21  was based not only on his own investigations but on contact with WSL members, testifying in

22  court on them and reading police reports.  The court does not find that the number of

23  investigations he conducted undercut his credibility regarding this issue to the point that the jury

24  could not have reasonably relied on his testimony.

25         Petitioner also objects to Sergeant Cook's testimony that he relied on police

26  reports.  Petitioner argues that the jury should not have relied on this testimony because Sergeant

1    Cook did not otherwise describe these reports.  No evidence suggests that Sergeant Cook's

2    testimony regarding the reports was incredible.  Sergeant Cook was not required to testify

3    regarding the reports in any more detail in order for the jury to reasonably rely on them.

4             Petitioner also argues that because Sergeant Cook testified that he did not know

5    exactly how many crimes WSL members commit, he was not qualified to testify regarding the

6    "primary activity" of the gang.  In the portion of the testimony cited by petitioner, Sergeant Cook

7    testified that he did not know whether WSL members committed more crimes than young men in

8    Manteca who are not WSL members.  RT at 850.  This testimony does not undercut Sergeant

9    Cook's opinion that the primary activity of the WSL is the criminal activity described above.

10            After independently reviewing the record, the court finds that the summary denial

11   of this claim by the California Supreme Court in its summary order denying petitioner's habeas

12   corpus petition was not an unreasonable application of clearly established Supreme Court

13   authority.  Petitioner's November 28, 2005, opposition, exhibit A.  Accordingly, this claim

14   should be denied.

15                  *Insufficient Evidence of Intent*

16            To be convicted of § 186.2(b)(1), a criminal defendant must have committed the

17   felony with the specific intent to promote, further, or assist in any criminal conduct by gang

18   members.  Cal. Penal Code § 186.22(b)(1).  Petitioner argues that there was insufficient evidence

19   that he committed the assaults with the intent to promote, further or assist the WSL gang.

20            In Garcia v. Carey, 395 F.3d 1099 (9th Cir. 2005) the Ninth Circuit reversed the

21   petitioner's conviction for violating § 186.22(b)(1) on grounds that there was insufficient

22   evidence that he committed the felony with the specific intent to promote, further, or assist in any

23   criminal conduct of the gang.  The Ninth Circuit interpreted § 186.22(b)(1) as requiring proof

24   that the defendant committed the crime with the specific intent to facilitate other conduct by the

25   gang.  395 F.3d at 1103.

26   /////

11

1      Some California Courts have rejected <u>Garcia v. Carey</u>, finding that specific intent

2   "does not require intent to further criminal conduct beyond the charged crime."  <u>People v.</u>

3   <u>Romero</u>, 140 Cal.App.4th 15, 19, 43 Cal.Rptr.3d 862 865 (2006) ("By its plain language, the

4   statute requires a showing of specific intent to promote further, or assist in 'any criminal conduct

5   by gang members,' rather than other criminal conduct."); <u>see</u> <u>also</u> <u>People v. Hill</u>, 142

6   Cal.App.4th 770, 774, 47 Cal.Rptr.3d 875, 877 (2006) ("There is no requirement in section

7   186.22, subdivision (b) that the criminal defendant's intent to enable or promote criminal

8   endeavors by gang members must relate to criminal activity apart from the offense defendant

9   commits.") .

10      A state court's interpretation of a state statute is binding on federal courts unless

11   the interpretation is untenable or a subterfuge.  <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399

12   (9th Cir. 1989).  Application of conflicting state court and Ninth Circuit decisions on the matter

13   of the correct interpretation of state law poses delicate issues for a district court.  The district

14   court is bound to follow the "correct" state law, but the district court is very hesitant to say that

15   the Ninth Circuit's interpretation of that law has become erroneous given the structure of the

16   federal court system.  However, at times, in matters of state law interpretation, events in state

17   courts overcome a previous federal decision.  The rule of state law interpretation is as follows:

18      In reviewing the district court's judgment, we must apply state law as it is
       presently defined, even if state law has been altered subsequent to the district
19      court's decision. <u>*Vandenbark v. Owens-Illinois Glass Co.*</u>, 311 U.S. 538, 541, 61
       S.Ct. 347, 85 L.Ed. 327 (1941); <u>Nelson v. Brunswick Corp.</u>, 503 F.2d 376, 381-82
20      (9th Cir.1974). In interpreting state law, we are bound to follow the decisions of
       the state's highest court. <u>Hewitt v. Joyner</u>, 940 F.2d 1561, 1565 (9th Cir.1991).
21      When the state's highest court has not spoken on an issue, we must determine
       what result the court would reach if we were standing in its shoes by examining
22      "state appellate court opinions, statutes and treatises." Id. In undertaking this task,
       "the California Court of Appeal's announcement of a rule of law 'is a datum for
23      ascertaining state law' " which we may not omit unless we are " 'convinced by
       other persuasive data that the highest court of the state would decide otherwise.' "
24      <u>Hangarter v. Provident Life & Accident Ins. Co.</u>, 373 F.3d 998, 1012-13 (9th
       Cir.2004) (quoting <u>Hicks v. Feiock</u>, 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 99
25      L.Ed.2d 721 (1988)) (internal quotation marks omitted).

26   <u>Johnson v. Riverside Healthcare System</u>, 516 F.3d 759, 767-768 (9th Cir. 2008).

1         Applying the statements in <u>Johnson</u>, especially that which requires application of

2    state law as it *presently* exists, this court should apply the more recent pronouncements of the

3    state appellate courts.  Firstly, it does not appear that the "other" criminal conduct issue was

4    really a matter of contention in <u>Garcia</u>.  True, it as mentioned in passing, as if the court assumed

5    such, but there was no analysis on the point.  Moreover, the California cases cited in the majority

6    opinion were not concerned with that issue.  There is no indication before the undersigned that

7    the state supreme court would interpret the issue of whether the crime at issue was meant to

8    facilitate "other" criminal activity differently than did these recent appellate cases referenced

9    above.

10        Accordingly, this court is bound by the state court's interpretation of §

11   186.22(b)(1) rather than the Ninth Circuit's statement in <u>Garcia v. Carey</u>.  There can be no doubt

12   that viewing only the criminal conduct at issue here, the actions of petitioner and his accomplice

13   were performed to assist their gang.  The all too familiar gang code requiring infliction of serious

14   injury, and even death, for trivial incidents of "disrespect" was at work here.  <u>See</u> e.g., <u>People v.</u>

15   <u>Olguin</u>, 31 Cal. App. 4th 1355, 1384-1385, 37 Cal. Rptr. 2d 596 (1994).  Any jury with an ounce

16   of common sense would have inferred such from these facts.  And even if the facilitation of gang

17   activity is based on mindless retaliation, it still facilitates the mindless activities of the gang.  The

18   seeking of "respect" here was in an of itself the facilitation of gang activity.

19        In any event, because there was sufficient evidence of petitioner's intent under the

20   Ninth Circuit's interpretation, there was sufficient evidence under the interpretation of this

21   statute by the California Court of Appeal.

22        Sergeant Cook testified that the type of incident petitioner was involved in would

23   benefit the reputation of his gang (and hence facilitate other criminal activity):

24       Q: I am going to ask you a hypothetical situation and ask your opinion on.
    Assume the following facts: May 13th, 2000, city of Manteca, two documented

25       members of the WSL street gang were driving in a car on Union Road in the city
    of Manteca and in another car were two individuals, one of which was a

26       documented member of a Sureno street gang.  As the cars passed by each other

there was words exchanged and possibly knives flashed and maybe profanities yelled.  Approximately a half hour later the Sureno was joined by another Sureno and they were at the Chervron station in Manteca pumping gas, and the two WSL members driving by, got out of their car and went to confront the member and one of the WSL members had a knife and ended up stabbing one of those Surenos while he was fighting with him.  And while the other WSL member was fighting with the other Sureno, the person that stabbed the first guy went over and stabbed the second guy and then they left in their vehicle.  Based on that hypothetical would you have an opinion as to whether those stabbings would be gang related or not?

A: Yes.

Q: What is that opinion?

A: That it would be gang related.

Q: If I told you the person that committed the stabbing was wearing red sweatpants, would that be significant?

A: Yes.  Going back to Norteno wearing red, they prefer red.

Q: Now do you have an opinion as to whether those stabbings would benefit the WSL street gang?

A: Yes, it would.

Q: What is that opinion?

A: Yes, it would benefit them.

Q: How?

A: Again, going back to the question of respect within, with other gangs. Again, going to fear.  That would build up their reputation, their respect to the community of gangs and also to fellow gang members.

Q: So would those stabbings benefit the reputations of those two WSL members?

A: Yes, it would.

Q: Would it benefit the reputation of the WSL gang in general?

A: Yes it would.

Q: And based on that hypothetical, do you have any opinion as to whether those stabbings would promote, further, or assist in criminal conduct by other gang members?

A: Yes I do.

14

Q: What is that opinion?

A: That it would escalate the use of force between the two gangs but definitely result in retaliation.

Q: Retaliation by the Surenos?

A: Yes.

RT at 781-782.

When the prosecutor asked Sergeant Cook if the stabbings would promote, further, or assist criminal conduct by other gang members, he was clearly referring to the WSL gang, i.e. would the stabbings promote, further or assist the criminal conduct of other WSL gang members. However, it appears that Sergeant Cook interpreted the question as asking whether the stabbings would promote violence by gangs other than the WSL, as demonstrated by his answer that the stabbings would cause the Surenos to retaliate.

Regardless of the confusion regarding whether the stabbings promoted criminal conduct by the WSL or Surenos, Sergeant Cook opined that the stabbings would promote the reputation of the WSL. This reasonable inference from this testimony was that the purpose of the stabbings was to intimidate and instill fear in rival gangs in order to further the WSL's ability to engage in criminal activity. The jury was not unreasonable in relying on this testimony to find that petitioner had the specific intent to facilitate the WSL in other criminal activities when he committed the stabbings. This testimony was sufficient evidence of petitioner's intent under the interpretation of the statute by the Ninth Circuit or the California Court of Appeal, as discussed above.

The California Supreme Court denied this claim, raised in petitioner's habeas corpus petition, without comment or citation. See Petitioner's November 28, 2005, opposition, Exhibit A. After independently reviewing the record, the court finds that denial of this claim by the California Supreme Court to be a reasonable application of clearly established Supreme Court authority. Accordingly, this claim should be denied.

1      B.  Ineffective of Trial and Appellate Counsel

2      *Legal Standard*

3           A claim of ineffective assistance of appellate counsel utilizes the same Strickland

4  standard that is applied to trial counsel.  Smith v. Robbins, 528 U.S. 259, 287, 120 S. Ct. 746,

5  765 (2000).

6           The test for demonstrating ineffective assistance of counsel is set forth in

7  Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  First, a petitioner must show

8  that, considering all the circumstances, counsel's performance fell below an objective standard of

9  reasonableness.  Strickland, 466 U.S. at 688, 104 S. Ct. at 2065.  To this end, the petitioner must

10 identify the acts or omissions that are alleged not to have been the result of reasonable

11 professional judgment.  Id. at 690, 104 S. Ct. at 2066.  The federal court must then determine

12 whether in light of all the circumstances, the identified acts or omissions were outside the wide

13 range of professional competent assistance.  Id., 104 S. Ct. at 2066.  "We strongly presume that

14 counsel's conduct was within the wide range of reasonable assistance, and that he exercised

15 acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d

16 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

17           Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

18 693, 104 S. Ct. at 2067.  Prejudice is found where "there is a reasonable probability that, but for

19 counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

20 694, 104 S. Ct. at 2068.  A reasonable probability is "a probability sufficient to undermine

21 confidence in the outcome."  Id., 104 S. Ct. at 2068.

22           In extraordinary cases, ineffective assistance of counsel claims are evaluated

23 based on a fundamental fairness standard.  Williams v. Taylor , 529 U.S. 362, 391-93, 120 S. Ct.

24 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

25           The Supreme Court has recently emphasized the importance of giving deference

26 to trial counsel's decisions, especially in the AEDPA context:

16

1    In <u>Strickland</u> we said that "[j]udicial scrutiny of a counsel's
     performance must be highly deferential" and that "every effort
2    [must] be made to eliminate the distorting effects of hindsight, to
     reconstruct the circumstances of counsel's challenged conduct, and
3    to evaluate the conduct from counsel's perspective at the time."
     466 U.S., at 689, 104 S.Ct. 2052.  Thus, even when a court is
4    presented with an ineffective-assistance claim not subject to §
     2254(d)(1) deference, a [petitioner] must overcome the
5    "presumption that, under the circumstances, the challenged action
     'might be considered sound trial strategy.'" <u>Ibid.</u> (quoting <u>Michel</u>
6    <u>v. Louisiana</u>, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

7    For [petitioner] to succeed, however, he must do more than show
     that he would have satisfied <u>Strickland's</u> test if his claim were
8    being analyzed in the first instance, because under § 2254(d)(1), it
     is not enough to convince a federal habeas court that, in its
9    independent judgment, the state-court decision applied <u>Strickland</u>
     incorrectly.  <u>See Williams</u>, <u>supra</u>, at 411, 65 S. Ct. 363.  Rather, he
10   must show that the [ ]Court of Appeals applied <u>Strickland</u> to the
     facts of his case in an objectively unreasonable manner.

11

12   <u>Bell v. Cone</u>, 535 U.S. 685, 698-699, 122 S. Ct. 1843,1852 (2002).

13            *Analysis*

14            Petitioner argues that his trial counsel was ineffective for failing to object to the

15   following questions by Sergeant Cook by the prosecutor:

16            Q: When we were preparing for this case, Sergeant Cook and I asked you to
              provide me with convictions for West Side Loco members.  How many did I ask
17            you to provide me with?

18            A: You asked me to provide at least two.

19            Q: Is that because that is all that is required by the code?

20            A: That's correct.

21   RT at 850-851.

22            A conviction of § 186.22(b) requires proof of a criminal street gang.  As set forth

23   above, section 186.22(f) defines "criminal street gang" as an organization having as one its

24   *primary activities* the commission of criminal acts and whose members engage in *a pattern of*

25   *criminal gang activity*.  Section 186.22(e) defines "pattern of criminal gang activity" as,

26            the commission of, attempted commission of, conspiracy to commit, or

                                    17

1                        solicitation of, sustained juvenile petition for, or conviction of two or more of the

following offenses, provided at least one of these offenses occurred after the

2                        effective date of this chapter and the last of those offenses occurred within three

years after a prior offense , and the offenses were committed on separate

3                        occasions, or by two or more persons:

4  Cal. Penal Code § 186.22(e).

5        Petitioner appears to be arguing that the prosecution's suggestion that "the code"

6  only required two convictions may have mislead the jury into believing that two convictions were

7  all that was required to prove that the WSL had criminal acts as one of its "primary activities."

8        It is clear from <u>Sengpadychith</u>, <u>supra</u>, and <u>Gardeley</u>, <u>supra</u>, that proof that a gang

9  had criminal acts as a "primary activity" would require more than two convictions by gang

10  members.  In <u>Sengpadychith</u>, the California Supreme Court stated that "[s]ufficient proof of the

11  gang's primary activities might consist of evidence that the group's members *consistently and*

12  *repeatedly* have committed criminal activity, listed in the gang statute." 26 Cal.4th at 323-324,

13  109 Cal.Rptr.2d at 857.   "Also sufficient might be expert testimony, as occurred in <u>Gardeley</u>,

14  <u>supra</u>, 14 Cal.4th 605." <u>Id.</u>  "There, a police gang expert testified that the gang of which

15  defendant Gardeley had for nine years been a member was primarily engaged in the sale of

16  narcotics and witness intimidation, both statutorily enumerated felonies."  <u>Id.</u>

17        The at-issue questions followed cross-examination of Cook regarding his

18  testimony that the WSL had criminal activity as one of its primary activities.  For this reason,

19  Sergeant Cook's testimony that "the code" required only two criminal convictions may well have

20  misled the jury to believe that only two convictions were required to prove criminal activity as a

21  primary activity.  For this reason, an objection by petitioner's counsel to the at-issue testimony

22  would likely have been sustained and required the prosecutor to clarify which element of §

23  186.22(b)(1) required proof of two convictions.

24        In determining whether petitioner was prejudiced by counsel's failure to object,

25  the court considers whether the jury instructions clarified that proof of "primary activity"

26  required more than two convictions.  The jury was instructed regarding section 186.22(b)(1) as

1   follows:

2           It is alleged in Counts 1, 2, 3 and 4 that the defendants committed those offenses
for the benefit of, or in connection with or association with any criminal street
3   gang, with the specific intent to promote, further, or assist in any criminal conduct
by gang members, in violation of Penal Code Section 186.22(b)(1).

4

5   A "criminal street gang" is defined as follows: One, ongoing organization,
association, or group, whether formal or informal; and two, having three or more
members; and, three, having a common name or common identifying sign or
6   symbol; and four, having as one of its primary activities the commission of one or
more of the following offenses, namely; assault with a deadly weapon, attempted
7   murder, sale of narcotics; and five, whose members individually or collectively
engage in or have engaged in a pattern of criminal gang activity.

8

9   A "pattern of criminal gang activity" is defined as follows: One, the commission
of, attempted commission of, conspiracy to commit or solicitation of sustained
juvenile petition for or conviction of two or more of the following offenses,
10   namely; attempted murder, sale of narcotics, methamphetamine, and auto theft;
and two, at least one of the offenses occurred after September 26th, 1988; and
11   three, the last of the offenses occurred within three years after a prior offense; and
four, the offenses were committed on separate occasions, or by two or more
12   persons.

13   RT at 1229.

14           The instructions clearly state that a "pattern of criminal activity" may be

15   demonstrated by two convictions.  The instructions regarding "primary activity" do not mention

16   convictions.  Rather, they require proof of criminal activity, not necessarily involving

17   convictions.  While the California Supreme Court's description of "primary activity" in

18   Sengpadychith, supra, and Gardeley, supra, is certainly more clear than the instructions read in

19   petitioner's case, the court finds that the instructions sufficiently distinguish between the proof

20   required for "pattern of criminal activity" and "primary activity" so that any confusion caused by

21   the questioning set forth above was clarified by the jury instructions.[1]  For this reason, petitioner

22   

23       [1] Following the California Supreme Court's decision in Sengpadychith in 2001, after
petitioner's conviction, it appears that CALJIC No. 17.42.2 was amended to include the language
24   contained in that case which described "primary activities":  "The phrase 'primary activities,' as
used in this allegation, means that the commission of one or more of the crimes identified in the
25   allegation, be one of the group's 'chief' or 'principal' occupations.  This would of necessity
exclude the occasional commission of identified crimes by the group's members."  CALJIC
26   17.42.2.

1    was not prejudiced by his counsel's failure to object.

2            In reviewing ineffective assistance of counsel claims, California courts apply the

3    Strickland standard discussed above.  People v. Waidla, 22 Cal.4th 690, 718 (2000).

4    Accordingly, for the reasons discussed above, the court finds that had appellate counsel raised the

5    ineffective assistance of counsel claim on appeal it would have been denied.

6            After independently reviewing the record, the court finds that the summary denial

7    of this claim by the California Supreme Court was not an unreasonable application of clearly

8    established Supreme Court authority.  See Petitioner's November 28, 2005, opposition, Exhibit

9    A.

10           C.  Jury Instruction Error

11           *Legal Standard*

12           A challenge to jury instructions does not generally state a federal constitutional

13   claim.  See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v.

14   Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  Habeas corpus is unavailable for alleged error in the

15   interpretation or application of state law.  Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475

16   (1981); see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786

17   F.2d 1378, 1381 (9th Cir. 1986).  The standard of review for a federal habeas court "is limited to

18   deciding whether a conviction violated the Constitution, laws, or treaties of the United States

19   (citations omitted)."  Estelle v. McGuire, 502 U.S. at 68, 112 S. Ct. at 480.  In order for error in

20   the state trial proceedings to reach the level of a due process violation, the error had to be one

21   involving "fundamental fairness."  Id. at 73, 112 S. Ct. at 482.  The Supreme Court has defined

22   the category of infractions that violate fundamental fairness very narrowly.  Id. at 73, 112 S. Ct.

23   at 482.

24           Where, as in the present case, what is at issue is the failure to give an instruction,

25   petitioner's burden is "especially heavy" because it has been held that "[a]n omission or an

26   incomplete instruction is less likely to be prejudicial than a misstatement of the law."  Henderson

                                                        20

1  v. Kibbe, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737 (1977).  Moreover, a trial judge need not

2  instruct on a defense which would be inconsistent with petitioner's theory of the case.  Bashor v.

3  Risley, 730 F.2d 1228, 1240 (9th Cir. 1984).  Failure to give a jury instruction under these

4  circumstances will not amount to a due process violation.  Id.

5         The burden upon petitioner is greater yet in a situation where he claims that the

6  trial court did not give an instruction sua sponte.  To the extent that petitioner rests his claim on a

7  duty to give an instruction sua sponte under rules of state law, petitioner has stated no federal

8  claim.  Indeed, in the failure to give a lesser included offense instruction context, the Ninth

9  Circuit has flatly held in non-capital cases that the failure to give the instruction states no federal

10  claim whatsoever.  James v. Reece, 546 F.2d 325, 327 (9th Cir. 1976).  Therefore, in order to

11  violate due process, the impact on the proceeding from failure to give an instruction sua sponte

12  must be of a very substantial magnitude.

13         Furthermore, the Supreme Court has recently held that there is no unreasonable

14  application of federal law where a state appellate court decided that a jury instruction's single

15  incorrect statement of the "imperfect self-defense" standard did not render the instruction

16  reasonably likely to have misled the jury.  Middleton v. McNeil, 541 U.S. 433, 124 S. Ct. 1830

17  (2004).

18         *Analysis*

19         Petitioner argues that the trial court failed to instruct the jury that to trigger the

20  enhancement, the jury had to *find* that one of the group's primary activities was the commission

21  of one or more of the statutory enumerated felonies.  Petitioner argues that while the instructions

22  *define* a "criminal street gang" and "pattern of criminal gang activity" they do not explain that the

23  elements of the enhancement must be *proven* and *found* beyond a reasonable doubt.

24         It appears that this argument is based on an issue addressed in Sengpadychith,

25  supra.  In Sengpadychith, the California Supreme Court held that the trial court erred by failing to

26  explain to the jury that in order to make a true finding on the enhancement, it had to find that one

1   of the gang's primary activities was the commission of one or more of the enumerated offenses.

2   26 Cal.4th at 321, 109 Cal.Rptr.2d 851.

3           Although not entirely clear from Sengpadychith and subsequent cases interpreting

4   this point, it appears that in Sengpadychith the jury received no instruction regarding the

5   enumerated offenses.  In the instant case, petitioner interprets Sengpadychith as holding that an

6   instruction like the one given in the instant case was inadequate because it failed to specifically

7   state that the jury must *find* that the one of the gang's activities was the commission of one or

8   more the enumerated offenses.  Petitioner argues that pursuant to Sengpadychith, the instruction

9   is deficient because it merely *defines* the elements of a criminal street gang.

10          In denying these claims, the California Court of Appeal found that the instruction

11  satisfied Sengpadychith:

12          Next, Gomez contends the trial court erroneously failed to instruct the jurors that,
            to find the gang enhancement true, they had to find that WSL had "as one of its
13          primary activities the commission of one or more of the criminal acts" enumerated
            in the statute.  (§ 186.22, subd. (f).)
14
            This claim of error lacks merit because the record shows the court included this
15          element of the enhancement, is item number 4 of the "criminal street gang"
            definition, in the written and oral instructions to the jury.
16

17  Opinion of California Court of Appeal, p. 8, respondent's lodged documents filed September 8,
    2006.
18

19          Because the jury was instructed in accordance with state law, the claim is without

20  merit.  In any event, to the extent petitioner is arguing that the instruction was not clear because it

21  did not specifically state that the jury must make a finding as to each element of the

22  enhancement, such a claim is without merit.  The court finds that a reasonable jury would have

23  understood that it was required to find each of the elements set forth in the instruction before it

24  could find petitioner guilty of § 186.22(b)(1).

25          Petitioner also argues that the instruction did not instruct the jury that it was

26  required to find each of the elements beyond a reasonable doubt.  The jury was generally

instructed regarding reasonable doubt:

> A defendant in a criminal action is presumed to be innocent until the contrary is proven, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty.  This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt.
>
> Reasonable doubt is defined as follows: It is not a mere possible doubt, because everything relating to human affairs is open to some possible or imaginary doubt.  It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.

RT at 1221.

Petitioner observes that the jury instruction for the deadly weapon enhancement stated that the People had the burden of proving the truth of this allegation beyond a reasonable doubt.  CT at 412.  From this, petitioner infers that because the street gang enhancement instruction did not specifically instruct the jury that the truth of that allegation had to be proven beyond a reasonable doubt, the jury may have believed that a lower burden of proof applied.

Because the jury was generally instructed, as set forth above, that the People had the burden of proving petitioner's guilt beyond a reasonable doubt, it is reasonable to assume that the jury applied this instruction when considering the street gang enhancement.  Moreover, the jury was not instructed as to any lesser burden of proof, making any confusion regarding the standard of proof required for the street gang enhancement even less likely.  In addition, the court also finds that a reasonable jury would understand that it was required to find each element of the enhancement beyond a reasonable doubt, as the instruction clearly instructed as to the elements of the enhancement.

The denial of these claims by the California Court of Appeal was not an unreasonable application of clearly established Supreme Court authority.  Accordingly, these claims should be denied.[2]

---

[2] In the answer, respondent argues that even if the instructions did not properly instruct the jury to find the listed offenses, in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000),

1          D.  Trial Court Error in Allowing Gang Expert Opinion Testimony

2          Petitioner argues that the trial court erred in allowing Sergeant Cook to testify as

3  to the purpose of the stabbing.

4          A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis

5  of some transgression of federal law binding on the state courts.  Middleton v. Cupp, 768 F.2d

6  1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is

7  unavailable for alleged error in the interpretation or application of state law.  Middleton v. Cupp,

8  768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v.

9  Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state

10  issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972).

11          The Supreme Court has reiterated the standards of review for a federal habeas

12  court.  Estelle v. McGuire, 502 U.S. 62, 112 S. Ct. 475 (1991).  In Estelle v. McGuire, the

13  Supreme Court reversed the decision of the Court of Appeals for the Ninth Circuit, which had

14  granted federal habeas relief.  The Court held that the Ninth Circuit erred in concluding that the

15  evidence was incorrectly admitted under state law since, "it is not the province of a federal

16  habeas court to reexamine state court determinations on state law questions."  Id. at 67-68, 112 S.

17  Ct. at 480.  The Court re-emphasized that "federal habeas corpus relief does not lie for error in

18  state law."  Id. at 67, 112 S. Ct. at 480, citing Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092,

19  3102 (1990), and Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75 (1984) (federal courts

20  may not grant habeas relief where the sole ground presented involves a perceived error of state

21  law, unless said error is so egregious as to amount to a violation of the Due Process or Equal

22  Protection clauses of the Fourteenth Amendment).

23          The Supreme Court further noted that the standard of review for a federal habeas

24  court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of

25  _____

26  any error was harmless.  This court does not that jury instructions violated Apprendi.

1  the United States (citations omitted)." Id. at 68, 112 S. Ct. at 480.  The Court also stated that in

2  order for error in the state trial proceedings to reach the level of a due process violation, the error

3  had to be one involving "fundamental fairness," Id. at 73, 112 S. Ct. at 482, and that "we 'have

4  defined the category of infractions that violate "fundamental fairness" very narrowly.'" Id. at 73,

5  112 S. Ct. at 482.  Habeas review does not lie in a claim that the state court erroneously allowed

6  or excluded particular evidence according to state evidentiary rules.  Jammal v. Van de Kamp,

7  926 F.2d 918, 919 (9th Cir. 1991).

8          The instant claim is based on state law.  Accordingly, petitioner is not entitled to

9  relief unless he demonstrates a violation of fundamental fairness.

10          The California Court of Appeal denied this claim for the following reasons:

11          In the trial court, Gomez unsuccessfully moved to preclude gang expert Cook
            from testifying "to the ultimate facts such as was this crime committed for a gang
12          purpose."  Gomez expressly abandons that objection on appeal.  Instead, he claims
            the expert improperly offered a "personal opinion" that the gang enhancement was
13          true.

14          *****

15          Cook never expressed an opinion that the gang enhancement was true.  After
            being presented with a hypothetical question, he merely testified that a stabbing
16          based on the facts he was asked to assume would, in his opinion, have been gang-
            related and committed for the benefit of a street gang for various reasons.  This
17          type of testimony is permissible.  (People v. Gardeley, supra, 15 Cal.4th at p. 619
            [gang expert may express an opinion regarding "a 'hypothetical' based on the
18          facts of the [case]"].)  Moreover, the jurors were instructed that an expert opinion
            is only as good as the facts upon which it is based (CALJIC No. 2.80) and that the
19          jurors were required to "decide from all the evidence whether or not the facts
            assumed in a hypothetical question have been proved" and, if not, how that
20          affected the weight of the expert opinion (CALJIC No. 2.82).  And other elements
            of the enhancement still had to be proved.  Accordingly, there was no error.
21

22  Opinion California Court of Appeal, pp. 7-8, respondent's September 8, 2006, lodged
    documents.
23

24          Based on the opinion of the California Court of Appeal, this court finds that

25  Sergeant Cook's testimony in response to the hypothetical question did not violate state law nor

26  constitute a violation of fundamental fairness.

1         The denial of this claim by the California Court of Appeal was not an

2  unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim

3  should be denied.

4         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

5  a writ of habeas corpus be denied.

6         These findings and recommendations are submitted to the United States District

7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

8  days after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11  shall be served and filed within ten days after service of the objections.  The parties are advised

12  that failure to file objections within the specified time may waive the right to appeal the District

13  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

14  DATED: 04/08/08

15                        /s/ Gregory G. Hollows

16                        UNITED STATES MAGISTRATE JUDGE

17

18  gomez.hab

19

20

21

22

23

24

25

26